UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOHAMED A. ABDELWAHAB,

                                    Petitioner,                          Case # 21-CV-6072-FPG

v.                                                                      DECISION AND ORDER

WILLIAM P. BARR, et al.,

                                    Respondents.

## INTRODUCTION

*Pro Se* Petitioner, Mohamed A. Abdelwahab, a civil immigration detainee at the Buffalo
Federal Detention Facility, has filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2241. ECF No. 1. He argues that his continued detention is unlawful under 8 U.S.C. § 1231(a)(6)
and is unconstitutional. The government opposes the Petition. ECF No. 5. Having reviewed the
record and the briefing, the Court finds that a hearing is unnecessary to resolve the Petition. For
the reasons that follow, the Petition is GRANTED.

## BACKGROUND

On August 1, 2017, Petitioner first arrived in the United States on a non-immigrant, B-2
visa, with authority to remain in the United States through January 31, 2018. ECF No. 1-1 at 3;
ECF No. 4-1 at 2. Petitioner remained in the country after that deadline, and immigration removal
proceedings were instituted against him on April 23, 2018, with the issuance of a Notice to Appear
("NTA"). *Id.* On October 1, 2018, Petitioner was charged with assault, arising out of a domestic
violence incident. *Id.* at 3. On May 26, 2020, Petitioner was again arrested and charged with
assault, arising out of another domestic incident. *Id.*

On May 27, 2020, Petitioner encountered Immigration and Customs Enforcement ("ICE")
while at the Bergen County Jail after his second for assault in New Jersey and was taken into ICE

custody.  *Id*.   Immigration authorities detained Petitioner pending removal, and Petitioner requested that an immigration judge ("IJ") review the custody determination.  *Id*. at 4.

A bond hearing was held on June 10, 2020, and an IJ found that Petitioner was not entitled to bond because he was a danger to the community to due to his pending charges related to the domestic violence incidents commenced against him by his wife and children.  *Id*.

On June 24, 2020, Petitioner appeared in immigration court with counsel for removal proceedings.  His attorney requested time to prepare and an adjournment was granted until July 15, 2020.  *Id*.

On July 15, 2020, Petitioner and his attorney appeared, and again requested an adjournment to have more time to prepare.  *Id*.  The ALJ granted the request and set the next removal hearing for July 29, 2020.  *Id*.  Meanwhile, on July 28, 2020, Petitioner's renewed request for a change in custody status was denied.  ECF No. 4-2 at 20-21.

On July 29, 2020, Petitioner appeared at the removal hearing and admitted to the factual allegations in the NTA.  *Id*. at 22.  Petitioner then requested and was granted a leave to file an application for relief from removal, which was due by August 19, 2020.  ECF No. 4-1 at 4.

On August 19, 2020, the parties appeared before the IJ.  *Id*. at 5.  Petitioner failed to submit an application for relief by that date, but the IJ gave him until September 2, 2020 to submit one. *Id*.  The IJ warned that the application would be deemed abandoned if not submitted by that date. *Id.*

On September 2, 2020, Petitioner again appeared with counsel at the removal hearing. The IJ noted that Petitioner had failed to file an application for Asylum, Withholding of Removal,

or Protection under the Convention Against Torture.[1]  *Id.*  Counsel for Petitioner explained that he filed an application the previous day, but Petitioner's wife, "was the applicant for relief and now wants him removed from the application.".  *Id.*

On September 28, 2020, Petitioner filed a Notice of Appeal to the Board of Immigration Appeals ("BIA"), and on February 8, 2021, the BIA dismissed Petitioner's appeal.  *Id.* at 5-6.

Finally, on March 11, 2021, Petitioner filed for a Petition of Review ("PFR") and a motion seeking a stay of his removal with the United States Court of Appeals for the Second Circuit.  *Id.* The petition and stay motion remain pending.  In total, Petitioner has been detained by immigration authorities for over twelve months.

## DISCUSSION

Petitioner argues that his continued detention without a bond hearing (1) violates 8 U.S.C. § 1231 and (2) is unconstitutional as a matter of procedural due process.[2]  *See* ECF No. 1 at 3-7. The Court will analyze both arguments in turn.

First, the Court will assess Petitioner's putative Section 1231 claim.  While Petitioner makes a Section 1231 claim, 8 U.S.C. § 1226 is the relevant provision in this case.  Section 1226 gives immigration officials the authority to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  That is, Section

---

[1] This Court notes on June 21, 2021, Petitioner filed a reply brief.  *See* ECF No. 8.  He raises some factual disputes concerning what occurred at the September 2, 2020 removal hearing.  *Id.* at 2.  These disputes are immaterial to the Court's analysis and need not be recounted here.

[2] To the extent Petitioner raises a substantive due process claim, he is not entitled to relief. Courts have recognized that an alien's detention may continue for such a long period as to violate his substantive due process rights, "regardless of the procedural protections afforded." *Fallatah v. Barr*, No. 19-CV-379, 2019 WL 2569592, at *3 (W.D.N.Y. June 21, 2019). The length of Petitioner's detention—approximately twelve months—does not meet that onerous standard. *See Sanusi v. INS*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (six-year detention did not violate due process); *Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019) (detention lasting more than two years and three months insufficient to violate substantive due process).

1226, "governs the detention of aliens whose removal proceedings are ongoing." *Thomas v. Whitaker*, No. 18-CV-6870, 2019 WL 164125, at *2 (W.D.N.Y. Apr. 16, 2019).

Section 1231 "governs the detention of aliens who are subject to a final order of removal." *Thomas*, 2019 WL 1641251, at *2. More specifically, Section 1231 "addresses immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which" immigration authorities must remove the alien. *Hechavarria v. Sessions*, 891 F.3d 49, 54 (W.D.N.Y. 2018). The removal period starts on the latest of the following:

(i)     The date the order of removal becomes final.
(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Relying on the language in subparagraph (ii), the Second Circuit concluded that "Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review [in the court of appeals]." *Hechavarria*, 891 F.3d at 56. Rather, because judicial review is ongoing and "removal is not inevitable," Section 1226 governs the detention of those aliens. *Id.* Put simply, Section 1231 governs the detention of aliens who are waiting for the government to effectuate their removal. *See* 8 U.S.C. § 1231(a)(1)(A), (B); *Hechavarria*, 891 F.3d at 55-56.

In this case, Petitioner is being held under Section 1226 and not Section 1231. Petitioner submitted his PFR on March 11, 2021. ECF No. 4-1 at 6. He has a pending motion for a stay of removal. Even though, unlike in *Hechavarria*, Petitioner's motion is merely pending before the Second Circuit, this does not change this Court's analysis. Under the government's forbearance agreement with the Second Circuit, Petitioner may not be removed while his motion to stay is pending. ECF No. 5 at 4; *see Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *3-4

(W.D.N.Y. Jan. 18, 2019) (discussing policy, whereby the government "will not remove any alien who has requested a stay of removal with a petition for review unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied"). Because of the pending appeal, the motion to stay, and the government's forbearance policy, Petitioner is not "immediately deportable" and his removal is "not inevitable." *Hechavarria*, 891 F.3d at 56-57. It is for this reason that, in *Thomas v. Whitaker*, this Court held that Section 1226 governs the detention of aliens like Petitioner, who have filed petitions for review and whose motions to stay removal are pending before the Second Circuit. *See Thomas*, 2019 WL 1641251, at *3.

Respondents invites this Court to revisit *Thomas* in light of *Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425 (W.D.N.Y. Jan. 8, 2020), a decision issued by District Judge Siragusa.

Judge Siragusa's decision in *Narain* comes to the opposite conclusion as this Court. After reviewing the statutory text, the history of the stay-of-removal mechanism, and the purpose of the forbearance agreement, Judge Siragusa concluded that the forbearance agreement could not "rise to the level of a court-ordered stay" as contemplated under Section 1231(a)(1)(B)(ii). Therefore, an alien with a pending stay motion on appeal is deemed to be held under Section 1231, not 1226. *Id.*

In the present case, the government should not be able to renege on the forbearance agreement it made with the Second Circuit. While the language of the statute could be read to suggest that a *court-ordered* stay is required, the reality is that the forbearance agreement operates as a "very clear impediment" to Petitioner's removal, and it therefore "make[s] no sense to classify [Petitioner] in the same section of the statute that governs the removal of aliens who have no remaining barriers preventing their immediate removal." *Hechavarria*, 891 F.3d at 57. The

Second Circuit has left open this issue, but a majority of courts within the Circuit have found that the forbearance agreement amounts to a court-ordered stay such that Section 1226 governs the alien's detention. *Rodriquez Sanchez v. Decker*, 431 F. Supp. 3d 310, 314 (S.D.N.Y 2019). The decisions from the other courts help to reaffirm the Court's conclusion that, because the forbearance policy is in effect in this case, Petitioner's detention is governed by Section 1226, and not 1231. *Id.*

Therefore, the Court will not address Petitioner's claim under Section 1231. Instead, this Court will analyze Petitioner's procedural due process claim as it relates to his detention under Section 1226. There is a two-prong test that is used to determine whether an alien's procedural due process rights have been violated due to continued detention under Section 1226(a): first, the Court must consider whether the alien's detention has been unreasonably prolonged since the last bond hearing; and second, the Court must determine if the government has provided constitutionally adequate procedural safeguards to justify the detention. *Quintanilla Mejia v. Barr*, No. 20-CV-6434-FPG, 2020 WL 5947139, at *3 (W.D.N.Y. Oct. 7, 2020); *see Thomas*, 2019 WL 1641251, at *6-7.

Applying this standard, Petitioner is entitled to a bond hearing. On the first prong, Petitioner has been in detention for over twelve months. ECF No. 4-1 at 3. Once detention continues past a year, courts have been "extremely wary" of "permitting continued custody absent a bond hearing." *Fremont v. Barr*, No. 18-CV-1128, 2019 WL 1471006, at *4 (W.D.N.Y Apr. 3, 2019) (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)).

Respondents argue that Petitioner extended his detention due to his own actions. ECF No. 5 at 9. This Court disagrees. While the Petitioner requested—and was granted—a few months' worth of adjournments from the IJ, this was a part of the "normal administrative process."

*Gutierrez Cupido v. Barr*, No. 19-CV-6367-FPG, 2019 WL 4861018, at *3 (W.D.N.Y. Oct. 2, 2019) ("[T]he Court rejects Respondents' attempt to place blame for the delays on Petitioner."). The Second Circuit has made a distinction between aliens who abuse the processes that are provided and those who simply make use of the processes offered to them. *See Hechavarria*, 891 F.3d 56 n.6. In this case, Petitioner appears to have sought continuances to gather more information and submit an asylum application with the help of his spouse. ECF No. 4-1 at 4-5. These adjournments and delays thus seem to be routine, unremarkable conduct within a normal administrative proceeding, and there is no evidence that they were a bad faith litigation strategy. *Singh v. Barr*, No. 1:19-CV-01096 EAW, 2020 WL 1064848, at *6 (W.D.N.Y. Mar. 2, 2020) (refusing to penalize petitioner for continuances because they did not "reflect a litigation strategy meant to prolong his immigration proceedings").

Accordingly, the Court concludes that the first prong is met. Turning to the second prong, Petitioner has not received sufficient process to justify his continued detention. This Court has repeatedly held that due process requires the government, not the alien, to prove by clear and convincing evidence that continued detention is justified. *Quintanilla Mejia*, 2020 WL 5947139, at *4. Petitioner has never received a hearing where Respondents held the burden of proving that detention was justified. *See* ECF No. 5 at 2 (finding that Petitioner received a bond hearing in correlation to his custody review hearing.). The fact that Petitioner later received several constitutionally inadequate "custody reviews" is irrelevant. *Quintanilla Mejia*, 2020 WL 5947139, at *4.

In short, because Petitioner's detention has never received a constitutionally adequate bond hearing, the Court concludes that Petitioner's continued detention violates his procedural due

process rights. He is entitled to relief in the form of a bond hearing with proper procedural safeguards, as set forth below.

Having resolved the petition, two procedural matters remain. First, the Court notes that the only proper respondent is Jeffrey Searls, the Assistant Field Office Director of the ICE Buffalo Field Office. As the person with direct control over Petitioner's detention, he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings—i.e., those challenging present physical confinement." (quotation omitted)). All other respondents will be dismissed.

Second, Petitioner sent this Court a letter on his experience inside the detention center. *See* ECF No. 7. He appears to be asking for injunctive relief against the facility, based on alleged mistreatment by the medical staff and personnel. *Id.* at 2-4. The Court declines to address this letter. The allegations Petitioner raised exceed the narrow scope of the petition, and so would require him to amend his petition. Moreover, because Petitioner may be released should he prevail at the ordered bond hearing, his requests for injunctive relief may become moot. To the extent Petitioner still wishes to prosecute these claims and seek any requested relief, he is free to file a new action.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED TO THE EXTENT that Respondent Jeffrey Searls is directed to bring Petitioner before an immigration judge for a bond hearing within fourteen (14) days of this Decision and Order. At the bond hearing, the government shall bear the burden of proving by clear and convincing evidence that Petitioner's

continued detention is justified based on his present risk of flight or dangerousness to the community. To conclude that continued detention is justified, the immigration judge must also find that there is no less restrictive alternative to detention that could reasonably assure Petitioner's appearance and the safety of the community. If a bond hearing is not held within the 14-day deadline set herein, Respondent Searls shall release Petitioner immediately with appropriate conditions of supervision. Within three (3) days of the date of the bond hearing, Respondent Searls shall file a notice with this Court certifying either (1) that a bond hearing was held by the applicable deadline, and the outcome thereof, or (2) that no bond hearing was held and that Petitioner was released with appropriate conditions of supervision. All other named respondents are DISMISSED from this action.

The Clerk of Court is directed to enter judgment in Petitioner's favor against Respondent Searls and close this case.

IT IS SO ORDERED.

Dated: June 22, 2021
Rochester, NY

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court